## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

HENRY MORGAN SMITH,
DESIREE SMITH,

        Plaintiffs

v.                                            No. Civ. 09-026 LH/DJS

CHAVES COUNTY DEPUTY BARRY DIXON,
individually and in official capacity; CHAVES COUNTY
DEPUTY SHANE BAKER, individually and in official
capacity; CHAVES COUNTY DEPUTY JAMES
MASON, individually and in official capacity; CHAVES
COUNTY DEPUTY JASON TUTOR, individually
and in official capacity; and CHAVES COUNTY
DEPUTY SCOTT OUILLETTE, individually and
in official capacity,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

On March 14, 2011, Defendants Barry Dixon, Shane Baker, Jason Tutor, Scott Ouillette, and James Mason ("Defendants") filed a Motion for Summary Judgment (Doc. 120), arguing that they are entitled to summary judgment on the only remaining claim asserted by Plaintiff Henry Morgan Smith because it is undisputed he did not have a possessory interest in the seized firearm, and thus, no personal right protected by the Fourth Amendment. On March 16, 2011, Defendants filed a Motion for Summary Judgment on Plaintiffs' Claims for Punitive Damages (Doc. 121). Finally, on March 18, 2011, Defendants filed a Motion for Summary Judgment on Claims Against All Defendants Except James Mason (Doc. 122), arguing that Defendants Dixon, Baker, Tutor, and Ouillette are entitled to summary judgment because there is no evidence that they requested or seized the firearm. The Court, having considered the motions, briefs, evidence, relevant law, and otherwise being fully advised, concludes that all three motions for summary judgment should be

denied.

## I.    FACTUAL BACKGROUND[1]

Plaintiff Henry Morgan Smith is a convicted felon whose last conviction was in 1983.  (*See* Aff. of Henry Smith (Doc. 100) ¶ 24.)  At the time of the facts alleged in the complaint, Mr. Smith lived with his wife of 27 years, Plaintiff Desiree Smith, and his son, Brandon Lee, at #2 Avenida De Vista, near Roswell, New Mexico.  (*See id.* ¶¶ 2, 4.)

Approximately 10 to 12 years before the incident involved in this case, Desiree Smith purchased a Rossi .38 caliber handgun from a legally licensed gun dealer in Roswell.  (*See id.* ¶¶ 4, 6.)  The firearm was registered to and owned by Mrs. Smith.  (Defs.' Mot. for Summ. J. (Doc. 120) (hereinafter "Defs.' MSJ (Doc. 120)"), Undisputed Fact ("UF") ¶ 14; Defs.' Mot. for Summ. J. on Pls.' Claims for Punitive Damages (Doc. 121) (hereinafter "Defs.' Punitive Damages Mot."), UF ¶ 15.)  The weapon was placed in a zipper case and stored unloaded in a locked closet in Plaintiffs' bedroom.  (Aff. of Henry Smith (Doc. 100) ¶ 8.)

On December 2, 2006, in the early morning hours, Plaintiff Henry Smith called law enforcement to report a suspicious vehicle parked near their home.  (See Defs.' MSJ (Doc. 120), UF ¶ 1.)  The vehicle sped off as Plaintiffs approached.  (*Id.*)  Some minutes after the first call,

---

[1]The following facts are undisputed or, if disputed, are those supported by admissible evidence.  Plaintiffs attempt to dispute many facts with reference to their Amended Complaint or by argument in their briefs.  At the summary judgment stage, however, Plaintiffs' mere allegations in their complaint and their arguments in their motion are not sufficient evidence upon which the Court can rely.  *See* Fed. R. Civ. P. 56(c)(1) (describing types of admissible evidence); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (explaining that a non-moving party, when faced with a summary judgment motion, must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial') (quoting former Fed. R. Civ. P. 56(e)).  The Court therefore only considered facts to be in dispute that Plaintiffs supported with admissible evidence.

2

Plaintiffs' son, Brandon, told Plaintiffs there was someone with a flashlight walking around outside at the neighbor's house.  (*Id.*, UF ¶ 2.)

Mr. Smith then called the dispatcher a second time to inform her about the person with the flashlight and identified himself as the one who had previously called about the suspicious car.  (*Id.*, UF ¶ 3.)  When asked by the dispatcher if he wanted to be contacted by a deputy, Mr. Smith replied, "yes."  (*Id.*)  Mr. Smith also told the dispatcher that he would go out and keep an eye on what was going on.  (Aff. of Henry Smith (Doc. 100) ¶ 9.)  When the dispatcher told him to be careful because it could be dangerous, Mr. Smith responded that they were armed.  (*See id.*; Defs.' MSJ (Doc. 120), UF ¶ 4.)  The dispatcher relayed the information that Mr. Smith was armed to Defendant Mason, who responded to the initial call.  (*See* Defs.' MSJ (Doc. 120), Ex. C (Doc. 120-3) at 1.)

Mr. Smith and Brandon went outside and made contact with three deputies who informed them that they had checked the neighbor's property and found no signs of a break-in.  (*Id.*, UF ¶ 6.)  Mr. Smith and Brandon then went back into the house.  (*Id.*, UF ¶ 7.)  Unidentified officers subsequently knocked on Plaintiffs' door and Brandon voluntarily answered the door.  (*Id.*, UF ¶ 8; Dep. of Brandon Smith 15 (Doc. 126-2 at p. 8 of 53).)

Mr. Smith then came to the door and Mrs. Smith stood behind him.  (*See* Aff. of Desiree Smith (Doc. 99) ¶ 12.)  Mr. Smith confirmed that he was a convicted felon.  (Defs.' MSJ (Doc. 120), UF ¶ 9.)  Mr. Smith also confirmed that his wife had a firearm in the house and that he knew where it was.  (*Id.*, UF ¶ 10.)  Mr. Smith at no time on the night in question stated that he had possessed the weapon on his person.  (*See* Aff. of Henry Smith (Doc. 100) ¶ 9.)

Defendant Mason asked Mr. Smith to turn over the firearm.  (Defs.' MSJ (Doc. 120), UF ¶ 11.)  Mr. Smith responded that the gun was not his, that it was his wife's.  (Aff. of Desiree Smith (Doc. 99) ¶ 13.)  Defendant Mason told Mr. Smith that he was going to confiscate the .38 pistol.

3

(*Id.* ¶ 12.)  Mr. Smith responded that he could not take his wife's gun and argued that he had no

right to take the firearm.  (*See* Defs.' Mot. for Summ. J. on Claims against all Defendants Except

James Mason (Doc. 122) (hereinafter "Defs.' Mot. (Doc. 122)"), UF ¶ 13; Defs.' Punitive Damages

Mot., UF ¶ 12; Defs.' MSJ (Doc. 120), Ex. C (Doc. 120-3) at 1.)  Defendant Mason ordered Mr.

Smith to turn over the firearm to them or be put down and they would come in and get the weapon.

(*See* Aff. of Henry Smith (Doc. 100) ¶ 13; Aff. of Desiree Smith (Doc. 99) ¶ 14.)  At that time,

Defendant Mason and four other deputies were armed and had their weapons drawn and pointed at

Mr. Smith.  (*See* Aff. of Henry Smith (Doc. 100) ¶¶ 13-14; Aff. of Desiree Smith (Doc. 99) ¶ 16.)

Mr. Smith, fearing for his and his family's safety because of "the five weapons staring [him] in the

face," told Brandon to retrieve the firearm, which Brandon did.  (Aff. of Henry Smith (Doc. 100)

¶ 14; Defs.' MSJ (Doc. 120), UF ¶ 12.)[2]  Brandon returned with a .38 special firearm inside a padded

case and handed it to Defendant Mason.  (*See* Defs.' MSJ (Doc. 120), Ex. C (Doc. 120-3) at 1.)

Defendant Mason and the other deputies then left with the firearm. (*See* Defs.' MSJ (Doc. 120), UF

¶ 13 & Ex. C at 1-2, 4.)[3]

---

[2]In her Affidavit, Mrs. Smith avers that she saw "four armed men with weapons drawn
and pointed at" Mr. Smith.  (Aff. of Desiree Smith (Doc. 99) ¶ 16.)  In her deposition, however,
Mrs. Smith testified that Defendant Mason and one other deputy at the door pulled out their
weapons and pointed them at Mr. Smith.  (*See* Defs.' Mot. (Doc. 122), Ex. A at 23.)  Mrs. Smith
testified that, although there could have been more deputies besides the two at the door, she did
not see any other deputies because Defendant Mason and the other deputy at the door were
blocking her view to the outside.  (*See id.*, Ex. A at 23-24, 37, 45-46.)  Mr. Smith, however,
asserted in his Affidavit that five armed deputies had their "weapons staring [him] in the face."
(Aff. of Henry Smith (Doc. 100) ¶¶ 13-14.)  Even in light of the inconsistencies in Mrs. Smith's
affidavit and deposition, the Court finds that, when considering Mr. Smith's sworn statement, the
evidence in the light most favorable to Plaintiffs is that Defendant Mason and four other deputies
had their weapons pointed at Mr. Smith.

[3]Plaintiffs argue in their brief that Defendants seized both the firearm and the case.
Plaintiffs' unsupported arguments are not evidence.  *See* Fed. R. Civ. P. 56(c).  Moreover, the
Amended Complaint, which is not evidence but presents Plaintiffs' case in the light most

Other than Defendant Mason, Plaintiffs cannot personally identify or describe what actions any of the other named Defendants took on the night in question.  (*See* Defs.' Punitive Damages Mot., Ex. A (Doc. 121-2).)  CAD records, however, demonstrate that the other deputies who responded to the scene that night were Defendants Barry Dixon, Shane Baker, Jason Tutor, and Scott Ouillette.  (*See* Pls.' Answer to Defs.' Punitive Damages Mot., CAD Report (Doc. 126-1 at p. 26 of 37).)  Defendants Dixon, Baker, Tutor, and Ouillette did not ask Plaintiffs to turn over the firearm.  (Defs.' Punitive Damages Mot. (Doc. 121), UF ¶ 20.)  Nor did Defendants Dixon, Baker, Tutor, or Ouillette receive the firearm from Plaintiffs' son.  (*Id.*, UF ¶ 21.)

Defendant Shane Baker avers that, although he reported to the call and checked the area for suspicious persons or vehicles, he did not leave his patrol vehicle or have any "contact" or "interaction" with Mr. or Mrs. Smith.  (*See id.*, Ex. C (Doc. 121-4) ¶¶ 1-6.)  He did not step onto Plaintiffs' property.  (*See id.*, Ex. C (Doc. 121-4) ¶ 5.)  Defendant Baker was not on or within sight of Plaintiffs' property when Brandon turned over the firearm; rather, he was patrolling the neighborhood in his vehicle.  (*See id.*, Ex. C (Doc. 121-4) ¶¶ 10-11.)  Nor did Defendant Baker ever see, hold, handle, touch, or take the firearm.  (*Id.*, Ex. C (Doc. 121-4) ¶¶ 8-9.)

The firearm that was seized was fire-damaged and not in working order.  (Defs.' MSJ (Doc. 120), UF ¶ 16.)  On October 17, 2008, a state district judge filed an Order for the destruction of the

---

favorable to them, asserts that Defendant Mason unzipped the case and removed the weapon. (Am. Compl. (Doc. 40) ¶ 58.)  Count I of the Amended Complaint, the only remaining count, asserts a claim for unlawful search and seizure of "the gun that was rightfully owned by the Plaintiffs."  (*Id.* ¶ 67.)  Plaintiffs make no reference to the gun case in either Count I or any other of their causes of action.  Nor does Mr. Smith or Mrs. Smith in their respective Affidavits assert that any of the Defendants took the case as well as the fiream.  (*See* Aff. of Desiree Smith (Doc. 99); Aff. of Henry Smith (Doc. 100).)  The police report only references Defendant Mason logging the firearm into evidence.  (Defs.' MSJ (Doc. 120), Ex. C (Doc. 120-3) at 1-2, 4.)  Even construing the evidence in the light most favorable to Plaintiffs, the Court does not have sufficient evidence to find that Defendants seized the firearm case.

Rossi .38 firearm.  (*Id.*, Ex. E (Doc. 120-5).)

## II.  STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party."  *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (internal quotations omitted).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment.  *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists.  *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial.  *Id.*  The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.*; *Kaus v. Standard Ins. Co.*, 985 F.Supp. 1277, 1281 (D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.

## III.  LEGAL ANALYSIS

### A.  Standing

Fourth Amendment rights are personal rights that cannot be vicariously asserted.  *Alderman*

6

*v. United States*, 394 U.S. 165, 174 (1969).  "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  A Fourth Amendment "'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *Id.*

Defendants argue that Mr. Smith does not have standing to maintain a claim for unlawful seizure of the firearm because the firearm was purchased by, registered to, and owned by Mrs. Smith, not Mr. Smith.  Defendants assert that, despite New Mexico's community property laws, Mr. Smith had no possessory rights to the firearm because, as a convicted felon, he could not legally possess the firearm at the time it was seized.  Plaintiffs, however, contend that Mr. Smith has standing because, under New Mexico community property laws, he has an ownership interest in the firearm that his wife purchased during their marriage.

Before this Court turns to the question of whether Mr. Smith has standing to assert his Fourth Amendment claim, this Court needs to clarify what the remaining Fourth Amendment claim is.  In initially construing Count I of Plaintiffs' Amended Complaint, the Court determined that Plaintiffs were asserting that "Defendants violated their Fourth Amendment rights to be free from unlawful entries, searches and seizures, and excessive force when the deputies entered Plaintiffs' property without a warrant or permission, threatened them, and seized their gun."  (Mem. Op. and Order (Doc. 69) at 4-5.)  The Court construed Plaintiffs' assertions that Defendants violated their rights by unlawfully entering onto their property without consent as an unlawful entry claim.  (*See id.* at 9.)  The Court dismissed that claim because the area of the property Defendants physically entered was not curtilage, and thus, Plaintiffs had no reasonable expectation of privacy in their front yard and the property leading up to their front door.  (*See id.*)

This Court then turned to Plaintiffs' claims for unlawful detention or arrest, excessive force,

7

and "unlawful seizure of the firearm." (*See id.* at 10.) In a subsequent opinion, this Court granted

qualified immunity to Defendants on Plaintiffs' unlawful detention or arrest and excessive force

claims. (*See* Mem. Op. and Order (Doc. 83) at 7-14.) This Court, however, has refused to dismiss

the "unlawful seizure of the firearm" claim, reasoning as follows:

> In this case, Plaintiffs allege that the deputies knocked on their door and asked Mr.
> Smith whether he was a convicted felon and whether he had a firearm. Plaintiffs also
> assert that, after Mr.Smith admitted to being a convicted felon and to his wife having
> a firearm in the home, the deputy defendants held Plaintiffs at gunpoint and
> demanded that Mr. Smith turn over his firearm to them. Although the deputies
> themselves did not personally search Plaintiffs' home and take the firearm out of the
> home, the command, at gunpoint, that Mr. Smith relinquish the firearm that was in
> the home amounted to a search and seizure. *Cf. United States v. Reeves*, 524 F.3d
> 1161, 1168 (10th Cir. 2008) ("[I]f an individual's decision to open the door to his
> home to the police is not made voluntarily, the individual is seized inside his
> home."); *Holland ex rel. Overdorff v. Harrigton*, 268 F.3d 1179, 1187-88 (10th Cir.
> 2001) (holding that plaintiffs were seized when SWAT team intentionally applied
> physical force by drawing their weapons and plaintiffs submitted to show of
> authority); *United States v. Maez*, 872 F.2d 1444, 1450 (10th Cir. 1989) (holding that
> suspect was arrested in home when he came out of home in response to SWAT team
> surrounding trailer, pointing rifles at trailer, and ordering occupants out over
> loudspeakers).

(Mem. Op. and Order (Doc. 69) at 11.) The Court concluded that Plaintiffs stated a Fourth

Amendment claim because the deputies lacked a search warrant or exigent circumstances. (*See id.*

at 11-12.)

Although this Court has repeatedly characterized Plaintiffs' remaining Fourth Amendment

claim as an "unlawful seizure of the firearm" claim, it is more appropriate to categorize this claim

as an unlawful search claim. In holding that Plaintiffs stated a Fourth Amendment claim, despite

the fact that Defendants never physically crossed the threshold of the home, this Court relied on

*Maez*, in which the Tenth Circuit explained that in cases of physical intrusion or coercion to leave

the home, "the privacy of the home is effectively invaded." *Id.* at 1451. The Tenth Circuit noted

that at the core of the Fourth Amendment is the right to retreat into one's home and be free from

unreasonable governmental intrusion.  *Id.* (quoting *Payton v. New York*, 445 U.S. 573, 589-90 (1980)).  The Tenth Circuit in *Maez* concluded that, where the defendant was ordered to come out of his home by a SWAT team pointing rifles at his trailer, the governmental intrusion, without consent or a warrant, was in the form of extreme coercion that effected the arrest of the defendant while he was in his home.  *See id.* at 1450-51.  Similarly, here, although Defendants did not physically search the home, by demanding that Mr. Smith relinquish the firearm at gunpoint, Defendants intruded on his right to privacy in the home.  The governmental intrusion was in the form of extreme coercion that effected the search of Plaintiffs' home, which resulted in the ultimate seizure of the firearm, without consent or a warrant.  To the extent the Court's prior decisions could be construed as holding that an unlawful seizure, not search, claim remains, the Court hereby amends its prior rulings to reflect that the Fourth Amendment claim left in this case is for unlawful search arising out of Plaintiffs' right to privacy in their home.  *See Soldal v. Cook County*, 506 U.S. 56, 63 (1992) (explaining that "search" occurs when citizen's reasonable expectation of privacy is infringed).

Viewed in this light, standing here is not conveyed by the Plaintiffs' property or possessory interests in the firearm, the item seized, but in the home, the place from which the firearm was coercively seized without a warrant.  Plaintiffs' Fourth Amendment right therefore does not derive from the nature or character of the item seized but from the privacy interest in the home from which it was taken.  For example, a criminal defendant does not have a lawful ownership or possessory right to illegal narcotics, but he still has standing to contest the warrantless search and seizure of drugs in his own home.  In this case, it is undisputed that Mr. Smith and the firearm were in his own home.  Because Mr. Smith had a property and possessory interest in the home, he has standing to challenge the warrantless "search," regardless of the legality of him owning or possessing the

particular item in that home.  *Cf. Payton*, 445 U.S. at 587 ("'It is one thing to seize without a warrant property resting in an open area or seizable by levy without an intrusion into privacy, and it is quite another thing to effect a warrantless seizure of property, even that owned by a corporation, situated on private premises to which access is not otherwise available for the seizing officer.'") (quoting with approval *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 354 (1977)).  The Court will therefore deny Defendants' motion for summary judgment on Mr. Smith's Fourth Amendment claim on the basis of lack of standing.

### B.    Claims against Defendants Dixon, Baker, Tutor, and Ouilette

Defendants Dixon, Baker, Tutor, and Ouilette ("the four deputy Defendants") argue that they are each entitled to summary judgment because Plaintiffs have produced no evidence that any of them "asked anyone to turn over the firearm, took the firearm, or even handled the firearm at all the night the firearm was allegedly unlawfully seized."  (Defs.' Mot. (Doc. 122) at 2.)  Defendants contend that Mr. Smith's testimony that five deputies pointed firearms at him is not enough to overcome the lack of evidence against the four deputy Defendants.

Plaintiffs did not file a separate response to the motion for summary judgment filed by the four deputy Defendants.  Plaintiffs' position and evidence against the four deputy Defendants, however, is set forth in their briefing responding to Defendants' other motions for summary judgment.  Although Plaintiffs cannot identify the four deputy Defendants or describe the specific actions taken by each one, they argue that the CAD report is sufficient evidence that the four deputy Defendants were on the scene, and thus, were the deputies that assisted Defendant Mason by pointing their guns at Mr. Smith.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  An official who

causes a citizen to be deprived of his constitutional rights can be held liable if the official set in motion a series of events that he or she knew or reasonably should have known would cause others to violate a citizen's constitutional rights. *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990) (quoting *Conner v. Reinhard*, 847 F.2d 384, 396-97 (7th Cir. 1988)). An officer who fails to intervene to prevent a fellow officer from violating a citizen's constitutional rights may also be liable under § 1983. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (citing *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)). Merely being in the same home or area when constitutional deprivations occur, however, is insufficient to establish liability. *See Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996). This law was clearly established at the time of the alleged constitutional violations in this case. *See, e.g.*, *Mick*, 76 F.3d at 1136 (holding that law was clearly established before June 18, 1992 that a law enforcement official who fails to intervene to prevent another law enforcement officer from violating a citizen's constitutional rights in his presence may be liable under § 1983).

The evidence construed in the light most favorable to Plaintiffs is that Defendant Mason and four other deputies pointed their firearms at Mr. Smith while Defendant Mason ordered Mr. Smith to turn over his firearm to him despite the lack of a warrant. Pointing firearms at Mr. Smith amounts to personal participation in the alleged Fourth Amendment violation where the display of firearms caused Mr. Smith to involuntarily turn over the firearm. According to Plaintiffs' evidence, the four other deputies were not merely present, they were actively participating in the forced warrantless search and seizure of Plaintiffs' firearm. Even though only Defendant Mason gave the order to turn over the firearm and only Defendant Mason physically held the firearm, the other four deputies were assisting him in his actions and supplying the force that caused the alleged constitutional deprivation. Moreover, none of the other four deputies intervened to stop the alleged constitutional

11

violation, even though they were present and would have had an opportunity to stop Defendant

Mason from ordering the gun be turned over without a warrant. *See Fogarty*, 523 F.3d at 1163-64

(affirming denial of qualified immunity to Captain where plaintiff's evidence indicated that Captain

may have stood by and witnessed plaintiff's arrest and resultant injuries without acting to prevent

alleged excessive use of force).[4] Consequently, based on Plaintiffs' evidence, the other four deputies

pointing firearms at Mr. Smith can be held liable for the Fourth Amendment violation. *Cf. Wulf v.

City of Wichita*, 883 F.2d 842, 864 (10th Cir. 1989) (holding official personally liable for

termination where official caused plaintiff's termination). The issue then becomes whether Plaintiffs

have sufficient evidence that Defendants Dixon, Baker, Tutor, and Ouillette were those four

deputies.

The CAD report identifies five deputies, and five deputies only, who responded to the scene,

and they are the five named Defendants remaining in this case.  Although Plaintiffs cannot

personally identify the four deputy Defendants, a reasonable inference to be drawn from the

evidence construed in Plaintiffs' favor is that the four deputy Defendants identified in the CAD

report in addition to Defendant Mason were the deputies who assisted him in pointing their firearms

at Mr. Smith.

Defendant Baker is the only defendant who submitted an Affidavit in an attempt to refute

Plaintiffs' evidence indicating that he was one of the deputies allegedly pointing his firearm at Mr.

---

[4]Defendants argue that Plaintiffs have not alleged a cause of action for failure to intervene, so the Court should not consider the four deputy Defendants' inaction or omission. Plaintiffs, however, have sufficiently alleged a Fourth Amendment unlawful search and seizure claim and the alleged facts, and evidence taken in Plaintiffs' favor, support a failure-to-intervene theory of liability.  The Court thus finds that Defendants had notice of the basis of Plaintiffs' claims so that no undue prejudice will result from the Court considering the theory.  In any event, the alleged actions of pointing firearms at Mr. Smith provide a sufficient basis, by themselves, to support liability for the Fourth Amendment claim.

Smith.  In his Affidavit, he admits to responding to the scene and not leaving his patrol vehicle. Defendants have not demonstrated, however, that any other deputies other than the five named Defendants responded to the scene.  Thus, even though Defendant Baker asserts that he had no "contact" or "interaction" with Plaintiffs, Mr. Smith's testimony that five deputies pointed guns at him creates a question of material fact as to whether Defendant Baker pointed a firearm at him.[5]  The Court is therefore unable to grant summary judgment in favor of any of the four deputy Defendants and will deny Defendants' Motion for Summary Judgment on Claims Against All Defendants Except James Mason.

### C.    Punitive Damages

Defendants move for summary judgment as to Plaintiffs' claims for punitive damages on grounds that Plaintiffs have failed to produce any evidence to create an issue of material fact that each remaining individual Defendant's conduct was motivated by evil motive or intent, or that their conduct involved reckless or callous indifference to Plaintiffs' federally protected rights.

Punitive damages in § 1983 cases may be awarded only if the challenged conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  Considerations for assessing punitive damages

---

[5]The use of the terms "contact" and "interaction" in Defendant Baker's Affidavit leaves some ambiguity as to whether those terms would encompass pointing one's firearm at Mr. Smith from a patrol car.  Moreover, although Defendant Baker avers that he was not on or within sight of Plaintiffs' property "when the firearm was turned over," that still leaves open the possibility that Defendant Baker was present when Defendant Mason ordered that the firearm be turned over.  At this stage in the proceedings, the Court must view the evidence in Plaintiffs' favor, and as discussed, Plaintiffs have submitted sufficient evidence to create a material question of fact for the jury to resolve.  It will therefore be the role of the jury to resolve the evidentiary differences between the parties.

include an evaluation of the nature of the conduct, the wisdom of pecuniary punishment, and the advisability of a deterrent. *Wulf*, 883 F.2d at 867. Punitive damages serve the function of deterrence and retribution, and thus, the focus should be on whether a defendant's actions call for deterrence and punishment over and above that provided by compensatory awards. *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1308 (10th Cir. 2003).

Based on the record before the Court, construed in Plaintiffs' favor, each Defendant should have known that there was no warrant to search the house and seize the firearm and, thus, they could not force Plaintiffs at gunpoint to turn over an item in their home without consent or exigent circumstances, which were absent here. The Court therefore cannot find as a matter of law that Defendants did not engage in reckless or callously indifferent conduct towards Plaintiffs' Fourth Amendment rights or that Defendants' alleged actions should not be deterred. Accordingly, the Court will deny Defendants' motion to dismiss Plaintiffs' punitive damages claims.

**IT IS THEREFORE ORDERED** that

1.      Defendants' Motion for Summary Judgment (**Doc. 120**) is **DENIED**;

2.      Defendants' Motion for Summary Judgment on Plaintiffs' Claims for Punitive Damages (**Doc. 121**) is **DENIED**; and

3.      Defendants' Motion for Summary Judgment on Claims Against All Defendants Except James Mason (**Doc. 122**) is **DENIED**.

_____

SENIOR UNITED STATES DISTRICT JUDGE

14