## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

HENRY MORGAN SMITH,
DESIREE SMITH,

        Plaintiffs

v.                                                      No. Civ. 09-026 LH/DJS

CHAVES COUNTY DEPUTY BARRY DIXON,
individually and in official capacity; CHAVES COUNTY
DEPUTY SHANE BAKER, individually and in official
capacity; CHAVES COUNTY DEPUTY JAMES
MASON, individually and in official capacity; CHAVES
COUNTY DEPUTY JASON TUTOR, individually
and in official capacity; and CHAVES COUNTY
DEPUTY SCOTT OUILLETTE, individually and
in official capacity,

        Defendants.

### MEMORANDUM OPINION AND ORDER

On September 6, 2011, Defendants Barry Dixon, Shane Baker, Jason Tutor, Scott Ouillette, and James Mason ("Defendants") filed a Motion for Summary Judgment and/or Qualified Immunity and Memorandum in Support Thereof (Doc. 174). The Court, having considered the motion, briefs, evidence, relevant law, and otherwise being fully advised, concludes that the motion should be granted.

## I.   FACTUAL BACKGROUND

The Court incorporates the facts set forth in its "Factual Background" section in its Memorandum Opinion and Order (Doc. 144) filed on May 24, 2011.

## II.   PROCEDURAL BACKGROUND

This Court has addressed the qualified immunity issue on Plaintiffs' Fourth Amendment claims numerous times in this case. A recitation of some of this Court's prior rulings will aid in

understanding the Court's reasons for the current decision.

On August 19, 2009, Defendants filed a Motion to Dismiss on the Basis of Qualified Immunity and on Other Grounds (Doc. 50) in which they argued that Plaintiffs' claims should be dismissed because they did not violate Plaintiffs' rights and were entitled to qualified immunity. In this Court's February 10, 2010 Memorandum Opinion and Order (Doc. 69), the Court initially determined that Plaintiffs were asserting in Count I of their Amended Complaint that "Defendants violated their Fourth Amendment rights to be free from unlawful entries, searches and seizures, and excessive force when the deputies entered Plaintiffs' property without a warrant or permission, threatened them, and seized their gun." (Mem. Op. and Order (Doc. 69) at 4-5.) The Court construed Plaintiffs' assertions that Defendants violated their rights by unlawfully entering onto their property without consent as an unlawful entry claim. (*See id.* at 9.) The Court dismissed that claim because the area of the property Defendants physically entered was not curtilage, and thus, Plaintiffs had no reasonable expectation of privacy in their front yard and the property leading up to their front door. (*See id.*) The Court also dismissed in the February 10, 2010 Memorandum Opinion and Order Plaintiffs' claims brought under the Fifth Amendment (Count II), the Fourteenth Amendment (Count III), 42 U.S.C. § 1985 (Count IV), the New Mexico Tort Claims Act (Count V), and the Second Amendment (Count VI). (*See id.* at 21-22.)

The Court also, at that time, denied Defendants' request to dismiss Plaintiffs' other Fourth Amendment claims for unlawful detention or arrest, unlawful seizure of the firearm, and excessive force against the deputy defendants. (*See id.* at 22.) In refusing to dismiss the "unlawful seizure of the firearm" claim, the Court reasoned as follows:

> In this case, Plaintiffs allege that the deputies knocked on their door and asked Mr. Smith whether he was a convicted felon and whether he had a firearm. Plaintiffs also assert that, after Mr.Smith admitted to being a convicted felon and to his wife having

a firearm in the home, the deputy defendants held Plaintiffs at gunpoint and demanded that Mr. Smith turn over his firearm to them.  Although the deputies themselves did not personally search Plaintiffs' home and take the firearm out of the home, the command, at gunpoint, that Mr. Smith relinquish the firearm that was in the home amounted to a search and seizure. *Cf. United States v. Reeves*, 524 F.3d 1161, 1168 (10th Cir. 2008) ("[I]f an individual's decision to open the door to his home to the police is not made voluntarily, the individual is seized inside his home."); *Holland ex rel. Overdorff v. Harrigton*, 268 F.3d 1179, 1187-88 (10th Cir. 2001) (holding that plaintiffs were seized when SWAT team intentionally applied physical force by drawing their weapons and plaintiffs submitted to show of authority); *United States v. Maez*, 872 F.2d 1444, 1450 (10th Cir. 1989) (holding that suspect was arrested in home when he came out of home in response to SWAT team surrounding trailer, pointing rifles at trailer, and ordering occupants out over loudspeakers).

(*Id.* at 11.)  The Court concluded that Plaintiffs stated a Fourth Amendment claim because the deputies lacked a search warrant or exigent circumstances.  (*See id.* at 11-12.)

On February 24, 2010, Defendants filed another motion to dismiss (Doc. 71), seeking the dismissal of all remaining claims and providing new reasons for the Court to reconsider its previous refusal to dismiss the unlawful seizure claims.  In a subsequent opinion, this Court granted qualified immunity to Defendants on Plaintiffs' unlawful detention or arrest and excessive force claims.  (*See* Mem. Op. and Order (Doc. 83) at 7-14, 26.)  The Court determined that, based on the facts in the Amended Complaint, Defendants had probable cause to arrest Mr. Smith and could lawfully arrest him when he voluntarily opened the front door and exposed himself to the public, and that, it was not clearly established at the time that Defendants could not arrest Mr. Smith under the circumstances alleged.  (*See id.* at 11.)  As for Mr. Smith's excessive force claim, the Court reasoned that, "[g]iven the facts known to the officers, particularly that Mr. Smith was a felon, that there was a firearm somewhere in the home over which he indicated he had some control, that it was the middle of the night, and that Mr. Smith was arguing with the deputies about whether he was unlawfully possessing the firearm, the deputy defendants had reason to believe that Mr. Smith might

3

be armed and dangerous to justify drawing and pointing their weapons out of concern for officer safety while they continued their investigation into Mr. Smith being a felon in possession of a firearm." (*Id*. at 12-13.) The Court dismissed Mrs. Smith's unlawful detention/arrest and excessive force claims for similar reasons. (*Id.* at 14.)

The Court, however, declined Defendants' request to reconsider its ruling denying them qualified immunity on Plaintiffs' claim that they unlawfully seized the firearm. (*See id.* at 15-19.) Relying on *Payton v. New York*, 445 U.S. 573 (1980), and its progeny, the Court concluded: "Although the deputy defendants did not themselves enter the home, Deputy Mason ordered Mr. Smith to give him the gun while the other deputies held him at gunpoint. Mr. Smith's decision to have his son get the gun and give it to them was not voluntary and amounted to a warrantless seizure of the firearm in the home." (Mem. Op. and Order (Doc. 83) at 15.) The Court determined that an exigency did not exist to seize the firearm without a warrant because a firearm could not be easily destroyed during the time to get a warrant and the officer safety justification did not extend to the seizure. The Court reasoned:

> Indeed, this Court has concluded that the deputy defendants had reason to be concerned for their personal safety sufficient to justify Plaintiff's public seizure at gunpoint. The facts, however, do not demonstrate as a matter of law that an exigency existed to take the further action of seizing the firearm without a warrant. The deputy defendants had already seized Mr. Smith and they could have further secured the scene by handcuffing Mr. Smith while they obtained a search warrant. The other occupants of the home were all standing directly behind Mr. Smith and there are no allegations indicating that they posed any additional threat. Any concern that any of the other occupants of the home might use the firearm is belied by the allegation that the deputy defendants allowed one of the other occupants to get the firearm and bring it to them – actions no reasonable officer would allow if genuinely concerned for his and his fellow officers' safety. Moreover, any such legitimate safety concern likewise could have been ameliorated by detaining the other occupants outside the home while they obtained a warrant.

(*Id.* at 16-17.)

This Court also considered and rejected Defendants' argument based on the plain view doctrine:

> Under the plain view doctrine, if police are lawfully in a position from which they view contraband whose incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they can seize the object without a warrant. *Minnesota v. Dickerson*, 508 U.S. 366, 374-75 (1993). As its name reflects, the plain-view doctrine applies to the "first-hand perception of contraband." *Texas v. Brown*, 460 U.S. 730, 739 (1983). None of the cases cited by Defendants stand for the proposition that the plain view doctrine applies when the officers' probable cause as to the existence of contraband is from a suspect's admission, not from first-hand observation. Nor do the cases involve the warrantless seizure of an object within a home, wherein the Fourth Amendment's protections are at their greatest, when exigent circumstances are not present. The deputy defendants, under the facts presented in the complaint, did not have a lawful right of access to the firearm without a warrant or exigent circumstances and did not observe the firearm first-hand. Consequently, the justifications underlying the plain-view doctrine do not create an exception to the warrant requirement in these circumstances. *See Payton*, 445 U.S. at 587 ("It is one thing to seize without a warrant property resting in an open area or seizable by levy without an intrusion into privacy, and it is quite another thing to effect a warrantless seizure of property, even that owned by a corporation, situated on private premises to which access is not otherwise available for the seizing officer.") (quoting *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 354 (1977)); *United States v. Davis*, 94 F.3d 1465, 1470 (10th Cir. 1996) ("The [plain view] doctrine serves to supplement the prior justification-whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused.") (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971)).

(Mem. Op. and Order (Doc. 83) at 18-19.)

The Court then addressed the second prong of the qualified immunity defense:

> The law requiring exigent circumstances or a warrant to justify the seizure of the firearm was clearly established at the time of the complaint. Under the clearly established law at the time, the deputy defendants should have known no exigency existed. The deputy defendants are therefore not entitled to qualified immunity.

(*Id.* at 19.) Consequently, after the August 23, 2010 Memorandum Opinion and Order, the only remaining claim Mr. and Mrs. Smith had in this case was what the Court described as their Fourth Amendment unlawful seizure of a firearm claim.

5

On March 14, 2011, Defendants filed a Motion for Summary Judgment (Doc. 120), arguing that they were entitled to summary judgment on the only remaining claim asserted by Mr. Smith because it is undisputed he did not have a possessory interest in the seized firearm, and thus, no personal right protected by the Fourth Amendment.  In ruling on the motion, the Court clarified what the remaining Fourth Amendment claim is:

> Although this Court has repeatedly characterized Plaintiffs' remaining Fourth Amendment claim as an "unlawful seizure of the firearm" claim, it is more appropriate to categorize this claim as an unlawful search claim.  In holding that Plaintiffs stated a Fourth Amendment claim, despite the fact that Defendants never physically crossed the threshold of the home, this Court relied on *Maez*, in which the Tenth Circuit explained that in cases of physical intrusion or coercion to leave the home, "the privacy of the home is effectively invaded."  *Id.* at 1451.  The Tenth Circuit noted that at the core of the Fourth Amendment is the right to retreat into one's home and be free from unreasonable governmental intrusion.  *Id.* (quoting *Payton v. New York*, 445 U.S. 573, 589-90 (1980)).  The Tenth Circuit in *Maez* concluded that, where the defendant was ordered to come out of his home by a SWAT team pointing rifles at his trailer, the governmental intrusion, without consent or a warrant, was in the form of extreme coercion that effected the arrest of the defendant while he was in his home.  *See id.* at 1450-51.  Similarly, here, although Defendants did not physically search the home, by demanding that Mr. Smith relinquish the firearm at gunpoint, Defendants intruded on his right to privacy in the home.  The governmental intrusion was in the form of extreme coercion that effected the search of Plaintiffs' home, which resulted in the ultimate seizure of the firearm, without consent or a warrant.  To the extent the Court's prior decisions could be construed as holding that an unlawful seizure, not search, claim remains, the Court hereby amends its prior rulings to reflect that the Fourth Amendment claim left in this case is for unlawful search arising out of Plaintiffs' right to privacy in their home.  *See Soldal v. Cook County*, 506 U.S. 56, 63 (1992) (explaining that "search" occurs when citizen's reasonable expectation of privacy is infringed).

(Mem. Op. and Order (Doc. 144) at 8-9.)  The Court then held that, because Mr. Smith had a property and possessory interest in the home, he has standing to challenge the warrantless search of the home, regardless of the legality of him owning or possessing the particular item – the firearm – in that home.  (*Id.* at 9-10.)

Subsequently, on September 6, 2011, Defendants filed another motion for summary

judgment and/or qualified immunity (Doc. 174) to address the remaining Fourth Amendment claim in light of the Court's re-characterization of the claim as an unlawful search, not seizure, claim. Defendants argue that, after Mr. Smith voluntarily admitted to having a firearm in the home, there was no further invasion of his privacy interest in the manner in which the firearm was taken.

## III.   STANDARD

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force and to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful. *Saucier v. Katz*, 533 U.S. 194, 206 (2001). When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test. *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). The plaintiff must demonstrate that (1) the defendant violated a constitutional or statutory right and (2) the right was clearly established at the time of the conduct. *Id.* A court has discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). As to the first inquiry, the question is whether the facts alleged, which are taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). The second inquiry is more specific than whether the officer's conduct violated a constitutional right; the question is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances he confronted. *Saucier*, 533 U.S. at 202. "[T]he

right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  As the Supreme Court explained,

> "[C]learly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

*Id.* at 614-15 (quoting *Anderson*, 483 U.S. at 640). Moreover, "in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

If the plaintiff establishes both elements of the qualified immunity test, then the burden shifts back to the defendant to show there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.  *Nelson*, 207 F.3d at 1206.  Summary judgment is appropriate only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).  "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party."  *Id.* (internal quotations omitted).

## IV.   LEGAL ANALYSIS

In this case, the appropriate inquiry on qualified immunity is, where Defendants had probable cause to secure a warrant to seize a firearm in a suspect's home and where officer safety

8

concerns were present that justified seizing the suspect at gunpoint in his doorway without a warrant, whether a reasonable officer could have believed that ordering the suspect at gunpoint to retrieve the firearm from the home and turn it over to the officers was lawful without a warrant, in light of clearly established law and the information the officers possessed.  *Cf. Wilson*, 526 U.S. at 615 ("In this case, the appropriate question is the objective inquiry whether a reasonable officer could have believed that bringing members of the media into a home during the execution of an arrest warrant was lawful, in light of clearly established law and the information the officers possessed.").

As this Court clarified in its previous opinion, the right at issue here was Plaintiffs' right to privacy in their home.  Although the officers never physically crossed the barrier to that home to retrieve the firearm, the Court nonetheless concluded that, assuming Plaintiffs' evidence to be true, a constitutional violation occurred based on the Tenth Circuit law holding that police violate the Fourth Amendment when, without a warrant, they order a suspect to come out of his home while pointing rifles at his trailer.  This Court reasoned that the governmental intrusion in the form of extreme coercion that effected the arrest of the defendant while he was in his home in the *Maez* case was similar to the governmental intrusion that effected the seizure of Plaintiffs' firearm in their home.  Defendants argue that this analogy is fundamentally flawed because the intrusiveness of a search was avoided here.  Defendants assert that, by forcing Mr. Smith to relinquish the firearm, Defendants did not infringe on any additional privacy right of the Smiths.

In re-analyzing the qualified immunity issue, the Court now holds that it was not unreasonable for the officers to have believed that they could order at gunpoint Mr. Smith to relinquish the firearm without a warrant, given the status of the law at the time of the alleged violation.  According to the Supreme Court, "[A]ny interest in possessing contraband cannot be deemed 'legitimate,' and thus, governmental conduct that only reveals the possession of contraband

9

'compromises no legitimate privacy interest.'" *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (quoting *United States v. Jacobsen*, 466 U.S. 109, 123 (1984)).  Mr. Smith admitted to being a felon. In forcing Mr. Smith to bring out the firearm, Defendants only gained information about a contraband item for which Mr. Smith already admitted to having in the home.  Defendants' action did not expose any non-contraband items that otherwise would have remained hidden.  It is therefore not clear that the *Maez* line of cases would extend to the situation here, to wit, to the taking of an object in a home for which officers have probable cause to believe is contraband by forcing the occupant to bring the object out of the home.  *Cf. Illinois v. Caballes*, 543 U.S. 405, 410 (2005) ("A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."); *United States v. Jacobsen*, 466 U.S. 109, 123 (1984) ("Congress has decided . . . to treat the interest in 'privately' possessing cocaine as illegitimate; thus governmental conduct that can reveal whether a substance is cocaine, and no other arguably 'private' fact, compromises no legitimate privacy interest."); *United States v. Brock*, 417 F.3d 692, 695-96 (holding that dog sniff outside locked door of bedroom did not constitute search because police had consent to enter common areas of residence and sniff could only detect presence of contraband without providing any information about lawful activity within bedroom over which suspect would have legitimate privacy expectation).  Indeed, neither party cited, nor was this Court able to find, a case extending the principles in *Maez* to a factually similar circumstance like this one.  It is even murkier here where this Court has already held that Defendants are entitled to qualified immunity on the excessive force claim because officer safety justified holding Mr. Smith at gunpoint.  Accordingly, Defendants are entitled to qualified immunity on the remaining Fourth Amendment claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment and/or Qualified Immunity and Memorandum in Support Thereof (**Doc. 174**) is **GRANTED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE