IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HENRY MORGAN SMITH
and DESIREE SMITH,

      Plaintiffs,

v.                                                                        Case No. 1:09-cv-26 LH/DJS

BOARD OF COUNTY COMMISSIONERS
FOR THE COUNTY OF CHAVES, NEW
MEXICO, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' request for costs and attorneys' fees incurred in connection with the preparation and filing of the pretrial order for this case. [Doc. 161.] Having considered the relevant pleadings and conducted a hearing on the matter, the Court grants Defendants' request for sanctions against the Plaintiffs. The Court will award Defendants a reasonable attorney fee in an amount to be determined upon submission of a proper attorney fee application.

I.      **BACKGROUND**

Pro se Plaintiffs Henry and Desiree Smith brought this case alleging several Chaves County sheriff's deputies violated their civil rights on December 2, 2006, during an encounter at Plaintiffs' home. Shortly after filing suit, Plaintiffs were granted leave to proceed *in forma pauperis*. [Doc. 3.] Plaintiffs' claims were dismissed through rulings on various dispositive motions, and the District Judge dismissed the last claim on September 20, 2011. [Doc. 178.] Judgment in favor of the Defendants was entered September 21, 2011. [Doc. 179.] Plaintiffs filed a Notice of Appeal on October 18, 2011. [Doc. 182.]

Defendants' request for sanctions was pending prior to the entry of judgment and relates to Plaintiffs' conduct in connection with preparing and filing the joint consolidated pretrial order. After Plaintiffs filed three noncompliant proposed pretrial orders, the Court granted Defendants' request to substitute their own version of a proposed pretrial order.  [Doc. 167.]

In granting Defendants' request to substitute the pretrial order, the Court found Plaintiffs had failed to cooperate with Defendants in preparing the pretrial order for this case and had persisted in filing defective and noncompliant pretrial orders.  [Doc. 167.]  On September 8, 2011, the undersigned conducted a show cause hearing during which Plaintiffs were afforded an opportunity to justify their conduct and thereby avoid a sanction.  At the show cause hearing, the Court heard arguments and accepted exhibits from both sides.

## II.   JURISDICTION

Judgment has been entered and this case is now on appeal.  The Court therefore first considers whether it has jurisdiction to sanction Plaintiffs.

"It is well established that a federal court may consider collateral issues after an action is no longer pending."  *Cooter & Gell v. Harmarx Corp.*, 496 U.S. 384, 395 (1990).  Motions for costs or attorney's fees are considered independent proceedings which may be decided even years after entry of judgment on the merits.  *Id.*; *see also Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998) (holding that fee awards granted as sanctions are collateral matters over which the district court retains jurisdiction even after notice of appeal).

The issue of sanctions in this case concerns Plaintiffs' conduct in the litigation; it is collateral to the merits of their now-dismissed claims.  The Court therefore concludes it retains jurisdiction over Defendants' request for attorneys' fees and costs, and that entry of judgment and the filing of a notice of appeal did not divest jurisdiction over the pending request for attorneys' fees.

2

## III.    LEGAL STANDARDS

The undersigned has the authority conferred on magistrate judges under 28 U.S.C. § 636(b)(1)(A) to decide matters involving nondispositive sanctions. *Hutchinson v. Pfeil*, 105 F.3d 562, 565 (10th Cir. 1997); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1465 (10th Cir. 1998). Rule 16(f) of the Federal Rules of Civil Procedure states:

> (1)   *In general*.   On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii) – (vii), if a party or its attorney:
>   (A)   fails to appear at a scheduling or other pretrial conference;
>   (B)   is substantially unprepared to participate—or does not participate in good faith—in the conference; or
>   (C)   fails to obey a scheduling or other pretrial order.
>
> (2)   *Imposing Fees and Costs*.   Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 16(f).

Rule 16 governs pretrial management and was intended to alleviate problems of congested court calendars and "disgraceful costs of litigation." *In re Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984). Rule 16 sanctions serve two purposes: primarily, enforcement of reasonable case management requirements; secondarily, compensation for parties who incur inconvenience and expense as a result of the opposing side's noncompliance. *Id.* at 1441. Monetary sanctions under Rule 16(f) should be proportionate to the seriousness of the violation and reflect where the fault lies, with counsel or client. *Turnbull v. Wilcken*, 893 F.2d 256, 259 (10th Cir. 1990).

## IV.    ANALYSIS

Plaintiffs do not dispute they violated the Court's orders regarding preparing and filing the pretrial order. [Doc. 185 (Transcript of show cause hearing) at 26–28.] The Court therefore finds

Plaintiffs are subject to sanctions under Rule 16(f) for failing to obey a scheduling or other pretrial order.  The Court further finds, as discussed below:  (1) the noncompliance was not substantially justified and (2) there are no other circumstances that make an award of expenses unjust.

### A.    Sanctionable conduct

The Court sets forth below the precise conduct that is subject to sanction.

#### 1.    Plaintiffs failed to comply with the Scheduling Order [Doc. 96]

The most recent scheduling order in this case required Plaintiffs to provide the consolidated pretrial order to the Defendants on or before April 18, 2011.  [Doc. 96 at 2.]  Plaintiffs did not comply with this requirement.  [Doc. 139 (Clerk's Minutes); Doc. 140 (Order).]

#### 2.    Plaintiffs failed to comply with the Order to file a consolidated pretrial order [Doc. 140]

Because Plaintiffs failed to provide their pretrial order input to the Defendants in accordance with the Scheduling Order, the Court directed them to file a consolidated final pretrial order consistent with the current status of the case.  [Docs. 139 (Clerk's Minutes), 140 (Order).]  Instead of filing a consolidated pretrial order that accurately reflected the status of the case, Plaintiffs filed a unilateral pretrial order that (1) largely omitted Defendants' input and (2) added new medical claims.  [Doc. 143.]

#### 3.    Plaintiffs failed to comply with the Court's second directive to file a consolidated pretrial order

At a status conference on June 30, 2011, the Court identified for Plaintiffs the deficiencies in their pretrial order and directed them to confer with Defendants' counsel and submit a revised pretrial order that included Defendants' information and deleted the new claims. [Doc. 158 (Clerk's Minutes).]

Approximately two weeks later, Plaintiffs filed a second version of the pretrial order.  [Doc.

160.]  The second version did not correct the deficiencies the Court identified in the first version and was in fact the same as the first version in all material respects: it included the claims the Court had ordered Plaintiffs to delete and omitted most of Defendants' information.  [Doc. 160.]

It was not until their third attempt at a pretrial order did Plaintiffs finally delete the new medical claims.  Even in the third version, however, Plaintiffs largely continued to ignore Defendants' input, such as their defenses and witnesses.  [Doc. 163.]

### B.      Plaintiffs' noncompliance was not substantially justified.

Plaintiffs were not substantially justified in filing three noncompliant pretrial orders.  At the show cause hearing, Mr. Smith offered several excuses, none of which the Court finds convincing.  Furthermore, Plaintiffs' persistent disregard of the Court's directions and the fluid and shifting nature of their explanations reflect adversely on the credibility of the excuses.  The Court addresses each excuse below.

### Typographical error

Plaintiffs claim their failure to delete the new medical claims was a "cut-and-paste" or typographical error.  [Doc. 185 at 6–8.]  The Court finds this excuse unsatisfactory.  The addition of new claims was the first error Defendants noted and that the Court ordered Plaintiffs to correct.  Plaintiffs were therefore not justified in submitting a second document containing the same mistake.  Furthermore, "cut-and-paste" or typographical error cannot explain Plaintiffs' failure to comply with the scheduling order directive to provide their consolidated pretrial order information to Defendants by April 18, 2011, nor does it explain their subsequent repeated failure to include Defendants' input.

### Miscommunication or misunderstanding

Plaintiffs cite a "miscommunication" with defense counsel for their failure to submit a compliant consolidated pretrial order.  According to Plaintiffs, they believed that Defendants'

counsel Mr. Hughes agreed to file the pretrial order.  [Doc. 185 at 6, 9, 10, 12, 13, 25–27.]

The Court rejects this excuse for three reasons.  First, on three occasions the Court unequivocally directed Plaintiffs to file the pretrial order.  [Docs. 139 (Clerk's Minutes), 140 (Order), 158 (Clerk's Minutes).]  Plaintiffs were therefore not justified in relying on Defendants' counsel to file it, regardless of any alleged miscommunication.

Second, a transcript[1] of the telephone conversation between Mr. Smith and Mr. Hughes on June 30, 2011, belies the miscommunication excuse.  The transcript (third page) demonstrates that Defendants' counsel also reminded Plaintiffs of their obligation to file the pretrial order:

Mr. Hughes:      ... And what we'll do is just...what ever we come to today I'll type it up and I'll send it you guys 'cause it's really Plaintiff's responsibility to file it.  So, I'll send it to ... what, you know, if we can agree I'll type it up and then I will send it to you and then you can look at it and then file it if it's...if you make any changes...call before and if you want to make any changes after than then we'll see if we can work out what is was...what the...you know...the warning is supposed to be, okay?

Mrs. Smith:      OK.  That would be fine.

The Court gave Plaintiffs the opportunity to examine the transcript before admitting it, and they do not deny the transcript accurately reflects the conversation.  The Court rejects as not credible Mr. Smith's claim that he assumed from this exchange Mr. Hughes would file the pretrial order. The transcript directly contradicts his claim that Mr. Hughes agreed to file the pretrial order.

---

[1]At the Show Cause Hearing, the Court admitted the transcript, without objection, as Defendants' Exhibit A.  [Doc. 185 at 22.]  Defendants' Exhibit A is attached to this Memorandum Opinion and Order.

Finally, Plaintiffs' actions in filing three pretrial orders is inconsistent with their claim that they expected Mr. Hughes to file the pretrial order for them.  To the extent Plaintiffs now contend their "final" pretrial orders were simply correspondence or suggestions not intended for filing, the Court rejects the claim as inconsistent both with their on-the-record statements [Doc. 185 at 7 (indicating Mr. Smith's intent to file pretrial order)] and with the documents themselves which were not presented to the Court as mere correspondence, are not marked as drafts, and each of which is titled "Final Pretrial Order."  [Docs. 143, 160, 163.]  The Court concludes Plaintiffs submitted the pretrial orders as "final" versions with the intent that they be filed as such.

### *Pro se* **status**

Plaintiffs claim that because they are not attorneys they misunderstood their obligations and the Court's orders.  The Court rejects this excuse.

Pro se status "does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."  *Odgen v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).  The Federal Rules of Civil Procedure impose a duty on litigants to comply with case management orders so as to avoid "wasteful pretrial activities."  Fed.R.Civ.P. 16(a)(3),(4).

The pretrial management orders Plaintiffs repeatedly flouted were intended to prevent the case from suffering unnecessary delay.  The pretrial order requirement in particular was intended to improve the quality of the trial, should trial have been necessary, by streamlining the issues.

An inaccurate pretrial order, such as Plaintiffs persisted in filing, has serious implications for the litigation.  The pretrial order supercedes the pleadings and is the controlling document for trial.  *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002).  "[C]laims, issues, defenses, or theories of damages not included in the pretrial order are waived, even if they appeared in the

7

complaint, and conversely, the inclusion of a claim in the pretrial order is deemed to amend any previous pleadings which did not include that claim." *Id.* Furthermore, witnesses omitted form the pretrial order may not be permitted to testify. [Doc. 88 at 2.] Thus, by submitting several defective pretrial orders, adding new claims and omitting Defendants' input, Plaintiffs complicated and misrepresented the issues for trial. Though their claims were ultimately dismissed on the merits without trial, their conduct necessitated frequent judicial intervention, resulted in unnecessary filings by both sides, and consumed significant resources.

Plaintiffs' *pro se* status is no excuse because the Court gave them specific directions regarding the deficiencies and repeatedly directed them to file a proper pretrial order. Plaintiffs were aware of the requirement to submit a single, consolidated pretrial order containing input from both sides. [Doc. 185 at 12, 29.] They were therefore not justified in believing they had complied by merely deleting the new medical claims while continuing to omit Defendants' input.

The Court rejects as not credible Plaintiffs' claim that the mistakes were honest and inadvertent. The pretrial order was the subject of two status conferences and two orders in which the Court repeatedly identified the deficiencies for the Plaintiffs and directed them to file a compliant pretrial order. There is nothing ambiguous or difficult to understand about the following directives:

> "Plaintiffs are hereby directed to file a consolidated pretrial order within ten (10) days from the date of this Order." [Doc. 140 (Order entered May 11, 2011.]

> "Ct orders Plaintiffs to confer with Mr. Hughes, revise the pretrial order, and submit a new pretrial order within 5 days that includes Defendants' information and deletes the new claims." [Doc. 158 (Clerk's Minutes, June 30, 2011).]

Further undermining Plaintiffs' credibility is their claim that they sent a "letter of apology" to the Defendants. At the show cause hearing, Mr. Smith claimed several times on the record that

he sent a "letter of apology" to Defendants' counsel.  [Doc. 185 at 7, 8, 11.]  However, when the Court asked to see the alleged letter of apology, Mr. Smith was unable to produce it and instead offered the Court a copy of Plaintiffs' response to Defendants' motion (previously appearing on the docket as document 162) and an unrelated letter of apology Plaintiffs received from Defendants' counsel over two years ago.[2]

The Court finds that Plaintiffs were capable of comprehending the requirements, despite their *pro se* status, and that they nevertheless filed three versions of the pretrial order that were deliberately inaccurate, not the result of inadvertence.

### C.    An award would not be unjust.

Plaintiffs argued at the show cause hearing that they are financially unable to pay a sanction. [Doc. 185 at 16, 17.]  The Court construes this as an argument that sanctions would be unjust because of their poverty.

To determine whether a sanction would be unjust, the Court directed Plaintiffs to submit a current financial affidavit.  After reviewing the financial affidavit [Doc. 176], the Court concludes that a sanction would not be unjust.

Plaintiffs' financial affidavit indicates their combined monthly income is approximately $1,900.  [Doc. 178.]  They own two vehicles they value at $850 and $500, respectively.  [Id. at 4.] They have two children, ages 19 and 15.  [Id.]

Their claimed monthly expenses consist of the following:

|  |  |  |
|---|---|---|
| rent or mortgage- | | $300 |
| utilities | - | $828 |

---

[2]The documents Mr. Smith handed to the Court, and which the Court admitted as Plaintiffs' Exhibit 1 [Doc. 185 at 23], are attached to this Memorandum Opinion and Order.

| | | |
|---|---|---|
| groceries | - | $720 |
| transportation | - | $30 |
| insurance | - | $45 |

The Court finds Plaintiffs have the wherewithal to pay a monetary sanction in some amount despite their allegations of poverty.  First, Plaintiffs are not immune from sanctions merely because they have been granted leave to proceed *in forma pauperis*.  *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (citing *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986)).  "Courts can assess cost and monetary sanctions against IFP litigants."  *Id*.  IFP status is not synonymous with inability to pay any costs whatsoever.  *Id*. at 838.  "The standard of poverty under the IFP statute requires a relatively minimal amount of sacrifice; it does not require an applicant to give up every amenity of life."  *Id.*  On the other hand, a litigant who has been granted the IFP privilege and abused it by misconduct "might be required to go into debt or to dispose of assets which the IFP process otherwise would have allowed him to keep."  *Id.*

Second, despite their allegations of poverty, the Court finds the expenses alleged in the financial affidavit are disproportionately high.  At $828, Plaintiffs' utility expenses are nearly triple their rent of $300 per month.  The figure is objectively unreasonable.  Furthermore, the utility expense Plaintiffs claim now is more than three times the amount they claimed in their original IFP application.  [Doc. 2 at 2 (claiming utility expenses of $250 per month).]

Plaintiffs' grocery bill further convinces the Court they have the ability to pay a monetary sanction.  Plaintiffs claim their monthly grocery bill is $720.  Add to this the food stamp benefit of $168 Plaintiff Mrs. Smith receives, and the total is $888 for their family of four.  This figure exceeds the current national monthly average "thrifty food plan" costs for a four-person family in the Smiths'

age group by about $200.[3]

The Court concludes a sanction would not be unjust to Plaintiffs. Although Plaintiffs qualified for IFP status when they filed this case two years ago, they have abused the privilege by their conduct in this case. They cannot now avoid sanctions by claiming unreasonably high expenses. Failing to award a sanction would be unjust to Defendants who have shouldered the expense of Plaintiffs' misconduct. The Court will consider Plaintiffs' financial circumstances when it determines the amount of the award.

### D.     Amount of sanction

Defendants submitted an Attorney's Affidavit [Doc. 170] which the Court finds inadequate to calculate an award. The affidavit lacks the information necessary for the Court to determine a reasonable fee. *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir 1986) (holding that basic standard for finding reasonable fees is the determination of reasonable hours and rates).

Now that the Court has determined Defendants are entitled to a fee award, Defendants shall submit a properly-supported fee application. Defendants bear the burden of establishing a reasonable amount, and failure to carry the burden may result in forfeiture of the sanction. *See Mares*, 801 F.2d at 1201, 1208.

## V.     CONCLUSION

The Court concludes: (1) the filing of a notice of appeal did not divest the Court of jurisdiction over Defendants' request for sanctions; (2) Plaintiffs engaged in sanctionable conduct; (3) their conduct was not substantially justified; (4) a monetary award would not be unjust; and (5) the amount of the award should be determined after Defendants submit a properly-supported

---

[3] *See* Official USDA Food Plans located at http://www.cnpp.usda.gov.

attorney fee application.

IT IS THEREFORE ORDERED that Defendants shall submit an attorney fee application within seven (7) days following the date of this Memorandum Opinion and Order.  Plaintiffs' response is due within seven (7) days after service of Defendants' attorney fee application.


_____
DON J. SVET
United States Magistrate Judge

12